**VIRGINIA:**

### IN THE ARLINGTON COUNTY CIRCUIT COURT

COLIN BRIESS
2600 Crystal Drive #708
Arlington, VA 22202

      PLAINTIFF,

      v.

VI DAI CJRT LLC
3550 S Clark Street
Arlington, Virginia 22202,

      and

JUDITH TURNER
3600 South Glebe Road
Apartment 424
Arlington, Virginia

      DEFENDANT.

Case No.: 19-1522

### FIRST AMENDED COMPLAINT

1.    Plaintiff Colin Briess brings this complaint for monetary and equitable relief, through counsel, against Defendant Vi Dai CJRT LLC ("VDC"), for breach of a contract of employment in violation of the law of the Commonwealth of Virginia, and against Defendant Judith Turner under Virginia Law that permits piercing the corporate veil against a company's alter ego, because she is the alter ego of VDC and directly and maliciously caused VDC to breach its agreement with Plaintiff in order to gain an unfair advantage.

2.    Mr. Briess also brings this claim for retaliatory dismissal  in violation of 42 U.S.C. § 1981.

3.    This is a case about a Defendant business (VDC) and its alter ego (Ms. Turner) that hired a manager (Mr. Briess) to manage its business. Then, during nearly three months of

Document received by the VA Arlington 17th Circuit Court.

employment, the Defendant breached that contract because it *never paid him any wages* and fired him in violation of a written employment agreement.

## PARTIES

4.      Defendant VDC is a Virginia Limited Liability Company with a principal office address of 3550 S. Clark Place, Arlington, VA 22202. VDC's managing member and alter ego is Defendant Judith Turner, an Arlington Virginia resident.

5.      VDC's sole business, on information and belief, is the operation of a juice bar in a leased space within the LA Fitness franchise located at the intersection of Jefferson Davis Highway and South Glebe Road in the Crystal City Neighborhood of Arlington County, Virginia.

6.      Defendant Turner, in addition to running VDC in her downtime, is a flight attendant. That job requires her to spend substantial amounts of time away from VDC which, in part, created difficulties for her in running VDC.

7.      On or about May 4, 2017, VDC, by Ms. Turner, executed and delivered to Mr. Briess an Employment Agreement between VDC and Mr. Briess effective as of May 1, 2017 (the "**Employment Agreement**"). VDC has blatantly breached the Employment Agreement, causing Plaintiff damages, and refuses to cure or even to correspond with Plaintiff regarding this matter.

8.      Mr. Briess is a resident of Arlington, Virginia. From February 2017 through May 2017, Mr. Briess bargained with VDC to become VDC's manager.

## FACTS

*Early Discussions and Negotiations*

Document received by the VA Arlington 17th Circuit Court.

9.      In early 2017, Mr. Briess learned of a juice bar, operated by VDC, that VDC's owner Ms. Turner had an interest in selling.

10.     At the time, Mr. Briess was a Retail Account Executive for AT&T in Seattle, Washington. In this role, Mr. Briess worked with AT&T's authorized dealers and national retail partners.

11.     Initially, Mr. Briess was uninterested in purchasing the juice bar.

12.     But Mr. Briess eventually came around to the idea, and on or about February 20, 2017, Mr. Briess expressed interested in the purchase.

13.     Then, from March 22, 2017 until March 29, 2017, Mr. Briess visited VDC in Arlington to observe it, further consider his options, and to talk over the potential sale with Ms. Turner.

14.     On or about the evening of March 24, 2017, Mr. Briess and Ms. Turner ate at Jaleo Restaurant in Crystal City to discuss the then-potential transaction.

15.     They discussed combining an Employment Agreement and an Option Contract so that Mr. Briess could explore, as VDC's manager, the realities of running the juice bar before deciding whether to execute the option and go forward with a sale.

16.     The next day, Mr. Briess and Ms. Turner visited the juice bar. During the roughly 6.5 hour visit, Mr. Briess inspected the leased facility, discussed operations and management with Ms. Turner, and worked alongside employees to determine whether he remained interested in the venture.

Document received by the VA Arlington 17th Circuit Court.

17.     After Mr. Briess's return to Seattle, he tried to arrive at a fair valuation of the company and considered whether the juice bar was likely to be profitable with his experience with retail sales locations.

18.     On April 21, 2017, Mr. Briess emailed Ms. Turner a proposed employment agreement and option contract.

19.     In that email, he wrote "You may wish to have an attorney review the agreements."

20.     The next morning, Ms. Turner acknowledged receipt by email and promised to review the documents shortly.

21.     On or about Sunday, April 30, 2017, Mr. Briess and Ms. Turner had a telephone discussion wherein Ms. Turner expressed concern regarding portions of the Agreements.

22.     Particularly, Ms. Turner was concerned about language that provided for an expense allowance for Mr. Briess's use.

23.     Mr. Briess thereafter, on May 1, 2017, sent modified versions of the Agreements to Ms. Turner for review, agreeing to modify the agreements in accordance with Ms. Turner's concerns.

24.     Both agreements bore Mr. Briess's signature when he sent them to Ms. Turner on May 1, 2017.

25.     On May 4, 2017, Ms. Turner emailed Mr. Briess executed copies of the Employment Agreement and the Option Contract.

26.     By mutual agreement of VDC and Mr. Briess, Mr. Briess was to start at VDC on June 10, 2017.

Document received by the VA Arlington 17th Circuit Court.

*Terms of the Employment Agreement*

27.     Pursuant to the Employment Agreement, Mr. Briess was employed by VDC as the "Store Manager."

28.     Colin's term of employment with VDC was "for the period commencing June 1, 2017 and ending June 1, 2019."

29.     The parties later agreed by email to amend that start date to July 1, 2017, though Mr. Briess began working and performing work for VDC prior to July 1, 2017.

30.     His rate of pay was as follows:

> II.1     <u>Base Salary</u>.  During the Employment Term, the Company shall pay Employee a salary as follows (the "**Base Salary**"):
>
> - Eighty Percent (80%) of the Company's Net Operating Income (NOI).  NOI shall be defined as the Company's gross revenue subtracted by all reasonable operating expenses.  Reasonable operating expenses shall include, without limitation, cost of goods sold, salaries, franchise fees, insurance, taxes, and all recurring expenses associated with operation of the business.  Salary shall be based upon NOI of the prior month, and shall be payable within fifteen (15) days of the end of each month.

Ex. 2 p. 1

31.     In addition, in paragraph I.3 of the Employment Agreement, VDC Agreed to important provisions limiting Ms. Turner's permitted activities with the juice bar (the "**Prohibited Owner Activity**"), specifically: "Owner shall not engage in hands on or day-to-day activities of the Company, and shall not perform duties or activities that are customarily attendant to an employee."

32.     The Employment agreement enumerated the following nonexhaustive list of activities that Ms. Turner was not permitted to engage in:

5

Document received by the VA Arlington 17th Circuit Court.

(a)     Regular and continuous on-site presence;

(b)     Engaging in hands-on activities in the store;

(c)     Sourcing and securing raw materials; and

(d)     Managing or directing store employees;

(e)     Hiring store employees;

(f)     Firing store employees, excepting Employee pursuant to Article III.

Ex. 2. p. 2.

33.     Further, VDC and Mr. Briess bargained in Article III of the Employment Agreement for a limited right, by VDC, to terminate Mr. Briess's employment, as follows:

(a)     <u>Termination by Company For Cause</u>.  Subject to **Section III.2**, the Company may terminate Employee's employment and all of the Company's obligations under this Agreement at any time "**For Cause**" (as defined below) by giving notice to Employee stating the basis for such termination.  "**For Cause**" shall mean any of the following: (i) Employee has failed, over three (3) consecutive months, to generate or have generated monthly sales greater than 80% by value of the Company's average monthly sales for the same months in the prior year; (ii) Employee has committed a felony deemed by the Company to be substantially related to Employee's position; (iii) Employee has misappropriated funds or property of the Company; (iv) Employee's failure to carry out duties reasonably assigned to him after written notice with respect to such failure, or any act of gross negligence or willful misconduct in a material respect; (v) Employee's employment by the Company pursuant to the terms of this Agreement conflicts with any prior obligations of Employee to third parties, including, but not limited to confidentiality, non-competition or other agreements entered into by Employee with former employers or other third parties, or (vi) Employee has attempted to obtain a personal profit from any transaction in which the Company has an interest, and which constitutes a material corporate opportunity of the Company or is adverse to the interests of the Company, unless the transaction was approved in writing by the Company's Owner after full disclosure of all details relating to such transaction.

Ex. 2. p. 3.

34.     These provisions were important to Mr. Briess for specific reasons.

35.     First, Mr. Briess was preparing to quit his job, pack up his belongings, and move across the country on the hope that he, with his experience in retail management, might render the juice bar profitable.

Document received by the VA Arlington 17th Circuit Court.

6

36.     But he had serious concerns, owing to his own assessment that Ms. Turner was perhaps the juice bar's biggest liability.

37.     Mr. Briess knew that he was involving himself with a small business run by Ms. Turner (a flight attendant by trade) in her off time, and that the business had serious historical problems turning a profit, keeping adequate documentation, and maintaining enough staff to operate a full schedule during business hours.

38.     Mr. Briess was unwilling to travel across the Country and engage in this two-step transaction without important assurances that, *if the business were to fail*, it would be because *he* had failed, not because Ms. Turner has caused it to fail, despite his best efforts, because she refused to relinquish enough control for him to see whether he could make the business work.

39.     Ms. Turner agreed to this arrangement and executed a binding Employment Agreement with Mr. Briess in order to advance it. In reliance on her promises, Mr. Briess threw away his old life in favor of this new venture.

*Ms. Turner Engages in Rampant Prohibited Owner Activity*

40.     From the start, Ms. Turner wholly ignored her obligations as VDC's owner under paragraph I.3 and engaged in Prohibited Owner Activity.

41.     In fact, instead of refraining from engaging in "hands on or day-to-day activities," Ms. Turner merely conducted herself as an offsite manager and treated Mr. Briess as her assistant manager.

42.     Despite, for example, the prohibition against engaging "in hands on or day-to-day activities of the Company," Ms. Turner used a remotely accessible security camera to monitor the store from offsite, and to constantly complain to Mr. Briess about his job and instruct and

Document received by the VA Arlington 17th Circuit Court.

interfere with his right to operate the store unhindered by Ms. Turner's interference pursuant to paragraph I.3 of the Employment Agreement.

43.     While using this device, Ms. Turner attempted to operate as micromanager-in-chief, frequently sending text messages to Mr. Briess to interfere with his daily operation of the store as store manager.

44.     And if this were not enough to violate paragraph I.3, Ms. Turner also continuously encroached on Mr. Briess's exclusive and contractually-enumerated right, pursuant to paragraph I.3, to operate the store as he saw fit.

45.     For example, on or around June 21, 2017, Ms. Turner interviewed and hired an employee, in breach of paragraph I.3(b) and (e)[1] of the Employment Agreement.

46.     Also, on or around June 27, 2018, Ms. Turner conducted an interview of an employee, in breach of paragraph I.3(b) and (e) of the Employment Agreement.

47.     Also, on June 28, 2017, Ms. Turner directed Mr. Briess to "take the next few days off" because she was "disappointed and confused," in breach of paragraph I.3(b) and (d) of the Employment Agreement. Ms. Turner would allow Mr. Briess to return to work on July 1, 2017.

48.     Also, on or around June 30, 2017, Mr. Briess decided, as the Store Manager and operator of its day-to-day affairs, to inform VDC's franchisor of his role with VDC. Ms. Turner

---

[1] In this paragraph and the ones that follow, Plaintiff references breaches of the lettered subparagraphs of paragraph I.3. But those paragraphs are, by the terms of the Employment Agreement, non-exclusive. Ex. 2. p. 1-2 ("The type of day to day activities in which the Owner shall not engage and shall be delegated to Employee include, *but are not limited to*:") *emphasis added*. Thus, Ms. Turner might, and did, commit some breaches of paragraph I.3 though the breaching behavior does not fit neatly into one of the numbered examples listed in the Employment Agreement. The essential prohibition is on Ms. Turner engaging in "hands on or day-to-day activities of the Company" and performing "the duties or activities that are customarily attendant to an employee."

Document received by the VA Arlington 17th Circuit Court.

refused to allow Mr. Briess to notify VDC's franchisor of Mr. Briess's role as manager, in breach of paragraph I.3(b) and (d) of the Employment Agreement.

49.     Also, on July 12, 2017 at 12:49 pm, Ms. Turner directed Mr. Briess as follows: "We do not pay overtime to a staff if he/she doesn't complete all their tasks during their shift and have to stay back." This directive breached paragraph I.3(b) and (d) of the Employment Agreement, in addition to exposing VDC to risk of violating the Fair Labor Standards Act.

50.     Also, on July 13, 2017 at 4:31 pm, Ms. Turner decided and informed Mr. Briess that VDC would give one employee, Emmanuel Swinson, three more days of training before dismissing him, in breach of paragraph I.3(b), (d), and (f) of the Employment Agreement.

51.     Also, on July 14, 2017, at 9:26 am, Ms. Turner told Mr. Briess that "I expect our male staff to [take out the garbage]". This directive breached paragraph I.3(b) and (d) of the Employment Agreement, in addition to exposing VDC to risk of violating Title VII of the Civil Rights Act of 1964, which prohibits discrimination in the terms and conditions of employment based on gender.

52.     Also, on July 22, 2017 at 11:53 am, Ms. Turner told Mr. Briess not to put Mr. Swinson on the schedule anymore (against Mr. Briess's wishes) and to *close the juice bar* if the employee shortage this action created prevented the juice bar from remaining open, in violation of paragraph I.3(b), (d), and (f) of the Employment Agreement.

53.     This breach of the Employment Agreement terms regarding Prohibited Owner Activity is especially egregious, as can be demonstrated by the following text messages sent by Ms. Turner to Colin:

Document received by the VA Arlington 17th Circuit Court.

| Jul 22, 2017 12:11:02 PM | Colin, again do not put him on the schedule. He is no longer working at the juice bar. Final |
| Jul 22, 2017 12:07:03 PM | Cut the store hours down. I have enough on him to let him go. I already gave him his final warning |
| Jul 22, 2017 12:04:18 PM | I'm going to fire him |

54.     Also, on July 23, 2017 at 10:10 am, Ms. Turner directed Mr. Briess to water-down customer's products from the franchisor's recipes, which risks alienating customers.

55.     Also, on July 24, 2017, Ms. Turner directed Mr. Briess to make unauthorized withholdings from employee paychecks, which would violate Va. Code. § 40.1-29, in breach of paragraph I.3(d) of the Employment Agreement.

56.     Also, on July 31, Ms. Turner wrote Mr. Briess an email, directing him to "Please only order Muscle Milk, Monster Milk, Redline, Isopure, [and] Turbo Tea" from one vender, breaching paragraph I.3(c) and (d) of the Employment Agreement.

57.     Also, on August 4, 2017, Ms. Turner directed Mr. Briess that, when he hired staff, he was only to set their starting pay at $9/hr, in breach of paragraph I.3(b), (d), and (e) of the Employment Agreement.

58.     Also, on August 4, 2018, Ms. Turner directed Mr. Briess not to give raises to current employees, in breach of paragraph I.3(b), (d), and (e) of the Employment Agreement.

59.     Also, on August 5, 2017, Ms. Turner directed Mr. Briess, regarding someone she perceived as an applicant for employment, "If he's involved with the military/veterans then they

Document received by the VA Arlington 17th Circuit Court.

10

can help him with a job. Absolutely do not hire him." in breach of paragraph I.3(b), (d), and (e) of the Employment Agreement.

60.    Also, on August 12, 2017, Ms. Turner told Mr. Briess to "discuss the menu price increase with me before any changes are made." in breach of paragraph I.3(b)(d) of the Employment Agreement.

61.    Also, in August 2017, VDC, under Mr. Briess's management, was arranging to change the store's point-of-sale system to one offered by Squareup.com.

62.    Ms. Turner interfered with this process, writing Mr. Briess on August 13, 2017, that she had directed that the point-of-sale conversion be put off, in breach of paragraph I.3(b) of the Employment Agreement.

63.    Then, on August 18, 2017, Ms. Turner suspended Mr. Briess, in a series of text messages that read as follows:

| Received | Aug 18, 2017 4:49:52 PM | It has always been directive |
| Received | Aug 18, 2017 4:47:34 PM | That is a directive |
| Received | Aug 18, 2017 4:38:36 PM | I'm not meeting with you today. Take a few days off and I will contact you. |
| Received | Aug 18, 2017 2:31:57 PM | Colin, do not make any more purchases for the store |

64.    She would never permit Mr. Briess to return to work.

65.    The above-listed breaches of the Employment Agreement are not exclusive, as Ms. Turner appears to have wholly disregarded her obligations under the Employment Agreement.

Document received by the VA Arlington 17th Circuit Court.

*Mr. Briess Refused to Engage in Race-Based Discrimination*

66.     Ms. Turner has made multiple oral and written admissions demonstrating that she believes black people are lazy, hopeless, and poor workers, and that she did not want them working for VDC on account of those perceived characteristics.

67.     On some occasions, she spoke candidly about these biases, and on other occasions she would speak vaguely about "a certain group of people" or mention that someone "looks like" another person. The net effect, however, was to highlight, as opposed to hide, her race-based animus.

68.     During his employ, she attempted to force Mr. Briess not to hire black employees, which he was unwilling to comply with, and then to fire the black employees he had hired.

69.     Examples of Ms. Turner's admissions regarding her opinions of black people generally and as employees are as follows:

70.     On April 14, 2017 she authored a text message wherein she wrote, "these fking [*sic*] stupid black people are hopeless..."

71.     On April 21, 2017, she authored a text message wherein she wrote, "these fucking black people can't even…"

72.     On April 24, 2017 she authored a text message wherein she wrote, "Probably another lazy black friend of hers..."

73.     Of herself, Ms. Turner said that she couldn't be a racist "because she is Asian."

74.     On June 20, 2017, she wrote to Mr. Briess by SMS, saying, "Yes. There was also another African/American guy that used to work there that did the same thing...just so lazy looking, like they have no energy"

12

Document received by the VA Arlington 17th Circuit Court.

75.     On June 21, 2017, she wrote to Mr. Briess by SMS about a potential employee she'd interviewed (in violation of paragraph 1.3(e)  of the Employment Agreement) favorably, saying, 'She "looks" like [another white employee]'. The quotations surrpunding the word "looks" were in Ms. Turner's SMS.

76.     On July 20, 2017, Ms. Turner wrote to Mr. Briess by SMS about a proposed price increase, saying, "You will always have someone complain because it's human nature that people want everything for free or pay pretty much nothing for it. *A certain group of people* gave me a hard time when I took over 16 months ago because prices went up 20 cents . . ." Emphasis added.

77.     Mr. Briess understood from his non-written interactions with Ms. Turner that she was referring primarily to black women.

78.     In the case of Mr. Briess's employment, Ms. Turner's race-based animus against black employees manifested in her constant criticism of Mr. Swinson. Examples of Ms. Turner's race-based criticisms of Swinson include the following:

79.     On June 16, 2017, she wrote to Mr. Briess by SMS, saying, "I hope you include that in the employee handbook. And it may be too advance [*sic*] for someone like Manny to understand."

80.     On August 5, 2017, Ms. Turner wrote to Mr. Briess by SMS about Swinson, writing, "You need to make sure they upsell. It's an everyday reminder when you're dealing with people like that, need I say more"

Document received by the VA Arlington 17th Circuit Court.

81.    And Ms. Turner also complained constantly about Swinson's performance, in a manner that Mr. Briess understood to be pretext and a cover for her race-based bias. Examples of this include:

82.    On July 6, 2017, she wrote to Mr. Briess by SMS, saying "Why the extra time for Manny?"

83.    On July 7, 2017, she wrote to Mr. Briess by SMS, saying "Manny would be in the way more than help."

84.    On July 9, 2017, she wrote to Mr. Briess by SMS, saying "Also if you can interview the two women to replace Manny soon."

85.    On July 6, 2017, she wrote to Mr. Briess by SMS, saying, "Manny is not coachable and he feels entitled."

86.    On July 10, 2017, she wrote to Mr. Briess by SMS, saying "Forget about Manny."

87.    On July 14, 2017, she wrote to Mr. Briess in multiple SMS messages, saying as follows:

| Received | Jul 14, 2017 12:06:23 AM | Then we can get rid of him |
| Received | Jul 14, 2017 12:06:11 AM | We need to get him the extra three days of training that he claimed he didn't get enough so he can't say that he was not treated fairly like most of them do |

88.    Mr. Briess was extremely uncomfortable with Ms. Turner's treatment of Mr. Swinson, who he thought was nervous and in his first job. He and refused to participate in Ms. Turner's campaign of harassment.

89.    Ms. Turner harassed Mr. Swinson until Swinson quit.

Document received by the VA Arlington 17th Circuit Court.

90.     Ms. Turner was aware of Mr. Briess's refusal to harass and scheme to fire Mr. Swinson, and this was a constant source of animosity from her to Mr. Briess.

91.     On one occasion, she yelled at Mr. Briess, saying "I don't want you hiring any more of these fucking black people. I want you to hire good people."

*VDC Terminates Mr. Briess*

92.     On September 3, 2017, Ms. Turner delivered to Mr. Briess a Termination Letter by email and UPS. The letter was accompanied by a cover letter.

93.     In the cover letter, Ms. Turner declined to sell Mr. Briess VDC's assets, stating, "I am writing to inform you that the business is not for sale and if and when I decide to sell you will have first right of refusal. I am also returning your $500.00 check."

94.     Though not at issue in this action, at least as of the time of filing of this Complaint, Mr. Briess, through an entity he had set up, had also purchased an option contract to purchase all of VDC's assets, and he had attempted to exercise that option on On August 28, 2017. To the extent permissible by law, Mr. Briess reserves the right to bring suit for breach of that option contract against VDC and/or against Ms. Turner in her individual capacity.

95.     In the Termination Letter, Ms. Turner dismissed Mr. Briess from his employment with VDC because, she wrote, she "no longer [had] confidence in [Mr. Briess's] ability to perform as manager of NrGize Lifestyle Café."

96.     The Termination letter did not reference Article III of the Employment Contract, or specify that the termination was for cause.

97.     Neither did it describe any cause for Mr. Briess's dismissal that was authorized under Article III's paragraph (a), governing termination for cause.

Document received by the VA Arlington 17th Circuit Court.

98.     And, in fact, Mr. Briess had not engaged in any conduct sufficient to invoke Article III's termination for cause provisions.

99.     By sending the Termination Letter and the cover letter, VDC and Ms. Turner breached their obligations to Mr. Briess under the Employment Agreement.

*Employment Agreement Damages*

100.     During his employment with VDC, VDC never paid to Mr. Briess any wages, salary, or other compensation, further breaching the Employment Agreement.

101.     Pursuant to Article II.1 of the Employment Agreement, VDC was to pay to Mr. Briess "Eighty Percent of the Company's Net Operating Income (NOI)."

102.     The Employment Agreement defined NOI as VDC's gross revenues less all reasonable operating expenses.

103.     And reasonable operating expenses were defined to include, without limitation, "costs of goods sold, salaries, franchise fees, insurance, taxes, and all recurring expenses associated with operation of the business."

104.     The Employment Agreement specified that VDC would pay Mr. Briess his salary within fifteen days of the end of each month.

105.     And each salary payment would be based upon the prior month's NOI.

106.     Plaintiff's ability to calculate VDC's NOI, and thus his damages, is limited by the fact of his dismissal.

107.     After his dismissal, Plaintiff lost access to VDC's records.

Document received by the VA Arlington 17th Circuit Court.

16

108. With records available to Plaintiff at the time of his termination, Plaintiff is able to calculate a potentially representative NOI for the month of July 2017, but Plaintiff does not have sufficient documentation to calculate NOI for August 2017, or for any periods after that.

109. In July 2017, according to records available to Plaintiff at the time of his dismissal, VDC's total receipts were $12,165.59, its operating expenses were $6,116.59, for an NOI of $6,049.00.

110. Based on those documents, Mr. Briess is entitled, pursuant to the Employment Agreement, to $4,839.20 in salary from VDC for that month.

111. In calculating this figure, Plaintiff has referred to documentation he preserved upon learning of Defendants' breach of both contracts, and those documents disclose, for the month of July, substantial portions, if not all, of VDC's receipts, payroll, inventory purchases, and taxes (sales, state, and federal).

112. Undoubtedly, discovery will determine VDC's actual NOI for the months since his dismissal, and it may reveal that Plaintiff's calculated NOI for the month of July 2017 is based on incomplete information.

113. But using 80% of July 2017's NOI as an estimate for Mr. Briess's monthly pay from July 1, 2017 until March 31, 2019, Plaintiff calculates that VDC is indebted to him in the amount of $101,623.20.

---

## COUNT I
### *Against VDC*

*Breach of the Employment Agreement - Unpaid Wages During Employment*

114. Plaintiff realleges every preceding allegation in this Count I.

Document received by the VA Arlington 17th Circuit Court.

115.     From July 1, 2017 until September 3, 2017, Defendant VDC owed Plaintiff a contractual duty to pay Plaintiff a salary, equal to 80% of its NOI, pursuant to the Employment Agreement.

116.     Defendant VDC did not pay to Plaintiff that salary.

117.     As a result, Plaintiff has been harmed by Defendant in an amount unknown to Plaintiff. As described in Paragraphs 80-94, Mr. Briess's  damages under this Count I can be reasonably estimated to be $10,162.32.

---

**COUNT II**
*Against VDC*

*Breach of the Employment Agreement - Termination in Violation of Article III.1 of the Employment Agreement*

118.     Plaintiff realleges every preceding allegation in this Count II.

119.     On September 3, 2017, Defendant VDC owed Mr. Briess a contractual duty to retain him in his employment as the Store Manager unless and until (1) he engaged in conduct permitting a termination for cause, (2) he died or became disabled, or (3) he terminated his employment with or without cause, with a 30-day notice.

120.     VDC continues to owe to Mr. Briess that same duty, and that duty will not extinguish until June 1, 2019, by the terms of the Employment Agreement.

121.     Nevertheless, on September 3, 2017, VDC dismissed Mr. Briess from employment, in violation of the Employment Agreement.

122.     As a result, Mr. Briess has suffered damages, in an amount unknown to Plaintiff. As described in Paragraphs 80-94, Mr. Briess's  damages under this Count I can be reasonably estimated to be $91,460.88, calculated up to March 31, 2019.

Document received by the VA Arlington 17th Circuit Court.

123.    Mr. Briess continues to accrue damages at a rate that is unknown to Colin, but that can be reasonably estimated to be $4,839.20 per month.

---

## COUNT III
*Against Judith Turner*

*Piercing the Corporate Veil to Impose Liability on Ms. Turner, Jointly and Severally with VDC, for Counts I-II*

124.    Plaintiff realleges every preceding allegation in this Count III.

125.    Ms. Turner is the sole owner of VDC.

126.    During Mr. Briess's   employ, Ms. Turner maintained VDC with thin capitalization.

127.    For example on August 2, 2017, VDC's available balance in its sole checking account was only $17,225.17.

128.    And on August 16, 2017, VDC's available balance was only $21,281.84.

129.    Colin's likely damages against VDC for unpaid wages and wrongful termination ($91,460.88 as of March 31, 2019) will exceed that amount by more than a factor of four.

130.    During Mr. Briess's employ, he observed and learned about Ms. Turner commingling her funds with VDC's and using VDC's funds as her own.

131.    Ms. Turner also actively conceals VDC's true ownership.

132.    For example, on June 4, 2017 at 12:09:13, Ms. Turner wrote Mr. Briess a text message, stating "Btw Colin, I have never told customers or staff that I'm the owner of the juice bar, just the manager. The owner is Charlie, who lives in NY."

Document received by the VA Arlington 17th Circuit Court.

133.    Further, Ms. Turner caused Mr. Briess's illegal dismissal from VDC for explicitly personal reasons, writing in her Termination Letter to him, "As the owner and CEO of NrGize Lifestyle Café, a key component of my livelihood and personal financial viability, I can no longer accept the risks that employing you has exposed me to."

134.    For these reasons, and others to be developed in discovery and at trial, the Court should pierce the corporate veil and hold Ms. Turner personally liable for VDC's liabilities to Mr. Briess in this matter.

---

**COUNT IV**
*Against Judith Turner & VDC*

*Retaliatory Dismissal in Violation of 42 U.S.C. § 1981*

135.    Plaintiff realleges every preceding allegation in this Count IV.

136.    Plaintiff refused to participate in Ms. Turner's campaign of race-based harassment and plans to dismiss employee Swinson.

137.    Mr. Briess was also aware of Ms. Turner's racist statements condemning black people in explicit terms, so he further understood the race-based nature of Ms. Turner's determination to fire Swinson.

138.    Mr. Briess's refusal was protected activity under 42 U.S.C. § 1981.

139.    And that refusal was a large source of animosity on the part of Ms. Turner, as she constantly lobbied Plaintiff to fire Swinson while calling Swinson lazy on account of Swinson's race.

140.    Thus there exists a causal relationship between Turner's September 3, 2017 election to dismiss Plaintiff and Plaintiff's protected activity.

Document received by the VA Arlington 17th Circuit Court.

141.    As a result of VDC and Turner's illegal dismissal of Plaintiff in retaliation for conduct protected by law, Mr. Briess suffered:

       a.   Attorney's fees;

       b.   Costs; and

       c.   Compensatory Damages.

142.    Ms. Turner dismissed Plaintiff with malice with respect to his federally-protected right to oppose and refuse to participate in illegal conduct, permitting punitive damages to be assessed against her.

**RELIEF DEMANDED**

143.    Mr. Briess requests punitive damages against VDC and Ms. Turner for her violations of 42 U.S.C. § 1981.

144.    *Ad Damnum:* Mr. Briess requests monetary damages against both defendants for unpaid wages, both before and after VDC terminated his employment in breach of the Employment Agreement, in an amount estimated to be no less than $101,623.20. Because Mr. Briess knows that the foregoing figure is not complete, he seeks for his *ad damnum* clause damages in the amount of $800,000.

145.    Mr. Briess reserves the right, to the extent permitted by the Code of Virginia, the Rules of the Supreme Court of Virginia, and any other applicable laws or rules, to seek leave of Court to amend his *ad damnum* clause to conform with the evidence adduced during discovery.

146.    Plaintiff requests reasonable attorneys' fees, costs, and such other relief as the Court finds just and proper.

Document received by the VA Arlington 17th Circuit Court.

**MR. BRIESS DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated: August 19, 2019

Respectfully Submitted,

Jacob M. Small (VSB # 84460)
Attorney for Colin Briess
J. Madison PLC
9302 Lee Highway
Suite 1200
Fairfax, Virginia 22031
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com

22

Document received by the VA Arlington 17th Circuit Court.

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2019, I served the foregoing upon Defendants

at via First Class Mail addressed to their attorneys:

John C. Cook
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030

Jacob Small (VSB # 84006)
Attorney for Colin Briess
J. Madison PLC
9302 Lee Highway
Suite 1200
Fairfax Virginia 22031
P (703) 910-5062
F (703) 910-5107
jmsmall@jmadisonplc.com

Document received by the VA Arlington 17th Circuit Court.